## LANE *vs.* WILCOX.

55b    615<br>73 AD²334

In an action to recover damages for fraudulently adulterating milk by adding water to it, which was afterwards mixed with the milk of the plaintiff and others, his assignors, at a cheese factory, witnesses who- are farmers and dairymen, and well acquainted with the article of milk, are experts, and, as such, competent to testify whether the article delivered looked and tasted like milk and water or not.

In such an action, the rule allowing exemplary damages cannot be applied. The settled rule of damages is one of compensation, merely.

APPEAL from an order of the special term denying the defendant's motion for a new trial.

The defendant was charged with fraudulently adulterating milk, which was afterwards mixed with the milk of the plaintiff and others, at a cheese factory in Lewis county, and the plaintiff claimed as well for the damages which he sustained to his own milk, as for the damages sustained by the other persons, who had assigned their claims to him before the suit was brought.

It appeared on the trial, that in the spring of 1863 several farmers, including the plaintiff and a brother of the

defendant, made an arrangement with one Phelps, who owned a cheese factory, to manufacture their milk for that season into cheese; that an account should be kept by Phelps of the quantity of milk which each of the farmers delivered, and should manufacture it into cheese, and return to each of them such proportion of the cheese as the milk by them so delivered, respectively, bore to the whole quantitly; and they were severally to pay him one cent per pound for the manufacture of the cheese so delivered to them.

Testimony was given tending to show that on the 4th of August the brother of the defendant sold out to him his farm and dairy, and from that time until some time in September the defendant continued to deliver milk at the factory, under the arrangement above stated; and that after the 4th of August the defendant caused his milk to be watered before it was taken to the factory, and mixed with the other milk; and upon both these questions there was a conflict of evidence.

The court excluded evidence of the assignments to the plaintiff, of the claims of the other parties to the arrangement, upon the ground that they were not assignable, and held that the actual damages to be recovered by the plaintiff were limited to such as he alone had sustained.

Several exceptions were taken by the defendant to rulings of the judge, admitting evidence on the part of the plaintiff; but the only ones relied upon here are his admissions of testimony (under the defendant's objection) of dairymen and a manufacturer of cheese, that they tasted of the milk delivered by the defendant at the cheese factory, and that it tasted and looked like milk and water; to each of which rulings the defendant duly excepted.

The court charged the jury, that if they found a verdict for the plaintiff, they would find for such actual damages as he had sustained by the fraudulent mixing of the milk; " *and also such exemplary damages as the jury shall deem just*

Lane *v.* Wilcox.

*and proper, in view of the fraud committed.*" To which charge in regard to exemplary damages, the defendant's counsel duly excepted. The jury found a verdict in favor of the plaintiff for $51. A motion was made before the same justice, at special term, for a new trial, on his minutes. The motion was heard and denied; and from that order the defendant appealed.

*C. E. Stephens,* for the appellant.

*J. F. Starbuck,* for the respondent.

*By the Court,* FOSTER, J. Only two questions arise in this case. First, whether the judge erred in admitting the testimony objected to; and second, whether he erred in charging the jury that exemplary damages could be given.

I. The evidence objected to was properly admitted. The witnesses, who were farmers and dairymen, were well acquainted with the article of milk, and showed themselves competent to judge whether it was mixed with water or not. They testified that it was much colder than the milk delivered at the same time by other farmers, and that it looked blue; and the same was the case with the witness, who was a manufacturer of cheese. I think they were all experts, and, as such, competent to testify whether it looked and tasted like milk and water or not.

II. The more important as well as difficult question is, whether the charge that the jury should also find such exemplary damages as they should deem just and proper, in view of the fraud committed, was correct or not. In actions of slander, malicious prosecution, seduction, *crim. con.,* libel, assault and battery, and false imprisonment, where malice is proved or implied from the circumstances, juries may give exemplary damages, beyond those sustained by the plaintiff, by way of punishing the defendant, and for the purpose of setting a wholesome example, and

to prevent the repetition of such offenses against the public morals and the peace and good order of society. And the rule is well founded, and salutary in its operation. With the exception of assaults and batteries and libels, they are offenses of which the criminal laws do not take cognizance. They are committed against the persons, characters and feelings of those upon whom they are perpetrated, and no accurate measure of actual damages, whether to person, character or feelings, can ever be applied in such cases.

So, too, in actions of trespass to real or personal property, where the act is such as to show that it was done maliciously, exemplary damages can and should be given. As where it consists in girdling trees, destroying buildings or fixtures, poisoning animals or destroying the other personal property of the injured party; in all such cases of malicious trespass, the rule of damages contended for by the plaintiff's counsel applies, and it is because the act is wanton and malicious.

There may be cases of fraud perpetrated under such circumstances as to imply malice, and the rule of damage in such case should be the same as in those mentioned; but no such case is cited; and none has been cited or found, which applies that rule to such a case as this.

*Sedgwick* (on *Damages*) lays down the rule, that "where either of these elements, *fraud*, malice, gross negligence or oppression mingle in the controversy, the law, instead of adhering to the system, or even to the language of *compensation*, adopts a wholly different rule. It permits the jury to give what it terms punitive, vindictive or exemplary damages; in other words, blends together the interests of society and of the aggrieved individual, and gives damages, not only to recompense the sufferer, but to punish the offender."

No case is referred to in support of the proposition that *fraud* in a transaction warrants the finding of punitive

damages. Such a rule would be in direct conflict with the one applicable to analogous cases, and I think that no such rule prevails.

If one knowingly or fraudulently misrepresents to his vendee the quantity or quality of a farm, or the condition or quality of personal property which he sells to him, whereby he is induced to purchase, and is injured thereby; or knowingly and fraudulently misrepresents the pecuniary standing of a third person, to one from whom such third person is desirous of obtaining property on credit, whereby the person to whom such representations are made is induced to give such credit, and is injured thereby, the well settled rule of damages is one of compensation merely, and not punitive. So also in case of trespass to personal property, under a pretended claim of right and with a view to pecuniary gain only, the rule is the same; no matter how unfounded the claim may be, provided the act be not such as to imply malice.

In this case there is nothing from which malice on the part of the defendant can be implied. The act was a gross fraud, but it cannot be inferred that it was intended to injure the other parties concerned, any further than to the extent that it benefited himself. It would hardly be claimed that if the defendant had watered his milk, and had then sold it to the plaintiff, representing it to be un-adulterated, and the action had been brought for that, the rule of exemplary damages would apply. Such a rule would be in conflict with that which applies to other cases of fraud.

In my judgment, this case is analogous to the cases of frauds in the sales of real and personal property, and of fraudulent misrepresentations of the standing of third persons, above referred to; and the rule of damages should be, and is, the same. The same motives operate in this case as there, and the consequences are the same. The fraud complained of is no more wanton or malicious, and

the consequences no more injurious,. either to individuals or the public, than if affected by willful falsehood.

In all such cases, while damages should not be stinted, and should be liberal to cover all the losses caused by the fraud, I think the rule allowing exemplary damages cannot be applied. A new trial should be granted, with costs to abide the event.

[ONONDAGA GENERAL TERM, October 4, 1864. · *Morgan, Bacon* and *Foster*, Justices.]